Good morning again. May it please the court. I represent Kelly Lehouillier in this case. In this particular case we have two treating source statements, one from Dr. Andrew Florin and the other from Dr. Donald Dexter. Primary focus is on the opinion of Dr. Florin who indicated that she could be active for no more than three hours per day, lift not more than 15 pounds rarely, meaning less than 5% of the day, was limited to rare bending, kneeling, squatting, crouching, twisting, climbing, rare standing or walking. This would be work preclusive. In this particular case we have the judge making two primary findings, one being that she was working within the context of a workers' compensation case and not in the context, or the doctor's opinion was in the context of a workers' compensation case and not under a social security claim. I outlined the law or the facts of the case indicating that it's inaccurate that the judge was actually saying that this was not a workers' compensation case, but that he started evaluating her based upon her representations that she needed an evaluation and did apply for social security. The second part is the judge pointed to the demands placed upon her to state that she was unable to work. Now the judge pointed this out in September of 2010 when this statement was made, yet the evaluation was done by Dr. Herman in 2012. The fact that we waited for that length of time before he was willing to state his opinion would lead one to believe, and I would point that we don't need a whole lot of evidence according to the Herman decision to establish or substantiate what information the doctor relied upon. The fact is, is he made this statement, he's a treating source, he felt that her condition was severe enough to make this finding, and there's nothing but speculation on the part of the ALJ to assume or to try to assess that he did anything but this. There's nothing that the judge points to that specifically identifies how or why this opinion would have been skewed in such a way to do benefit for the claimant. Now I have indicated in here that I was encouraging the court to adopt a more stringent position on the treating physician rule, and I would just take a moment to point out that, interestingly enough, a couple of weeks ago the circuit writer published a decision from Magistrate Judge Johnston in the Northern District of Illinois addressing the same points I did, which is the utter confusion that exists with the treating physician rule. And I think a lot of these cases, especially this one, come before the court because there is such confusion in the standard. I think, and it's my position, that the regulations adopted by Social Security and by, basically, have created a presumption that a treating source statement is given a presumption unless significant evidence shows that that presumption is overcome. The Ninth Circuit has indicated that presumption should be overcome only on clear, satisfactory evidence. Now the court, I would note, in Gudgell, kind of implied that already, specifically indicating that a consultative examination alone is insufficient evidence to overcome a treating source.  What standard do you think we should adopt, and why do you think it would be an improvement? Judge Hamilton, let me point out, I do not just this, I do hearings as well, and I represent my clients on remand. And what ends up happening in these cases is we send them back on a treating physician, and then the judge either approves it based on the treating physician rule, or actually applies the regulatory factors and provides a two or three paragraph outline indicating the factors. We would certainly have judicial economy if the court made clear that that was the expectation to begin with. And any statement that the ALGs... You measured in terms of length of discussion, or what? Outlining the specific factors that are from the case, so that there's a bridge between the conclusions and the medical evidence. That's already the law, can't we be... Do we need to be more specific than that, and how would that work? That is the law, and it is not the law. There is some case law in this circuit which says that if the ALG provides any indication that he considered the rules, or she considered those regulations, that's enough. And there's some case law on that. There's also case law that says that has to be specifically addressed. There's also some case law that says that the checklist only applies if the presumption of controlling weight is overcome. And then there's some that says that any evidence is sufficient to overcome the presumption. So if a review of the case law over the last 10 years seems to imply that there's some real inconsistencies in how it's applied, and what I'm asking is, assess a presumption, provide detailed assessments saying why. Provide clear and satisfactory evidence why the presumption's overcome. Then once that happens, apply the regulatory factors. By requiring this in the initial phase, we're saving not only federal district court time in reviewing these, but we're also saving ALJ time, because when there's a remanded, judges, oftentimes judges who did not do the original case, have to hear the remanded case. And it's delaying and slowing down the whole process, when the whole point of this was Social Security established this pecking order, that treating source is the one to receive the most weight because they're familiar with the claimant, they've observed, they can assess credibility. Then the next is a consultative examiner who's actually assessed them, and the least weight is given to an examiner who's neither examined nor treated. And they established this, which seems to imply that they want each of these to have different weight, because they understand the impact of these on each. In this particular case, Dr. Florin, as a treating source, if adopted, would have resulted in a finding of disabled, simply because of the various components and all the limitations noted. The consultative examiners, who the ALJ in part relied upon, never examined Ms. LaHoolier, never treated Ms. LaHoolier, they're reviewing or doing a records review. So they've never had an opportunity to fully assess credibility, and they've never had any opportunity to see her exact situation. So I guess that's the point I'm making on this. And I'd ask the court to try and provide some clarity for all of us in regards to this by requiring more meat on the front end so that these cases are reduced. I know that Judge Johnson, in his article, indicated that in 2014, there were 411 cases in the Northern District of Illinois, but 160 in 2005. I know myself, I filed 120 federal district court cases last year. And briefed every one of them myself. So it's busy. And we continue to have this problem. This is an issue that arises in almost, well, probably 70% of the cases. I'll reserve my remaining time for report. Thank you, Mr. Nelson. Mr. Nelson? Thank you, Your Honor. May it please the court, Andrew Nelder on behalf of the Acting Commissioner of the Social Security Administration. Going into the treating physician rule at the start, I would note that in Magistrate Judge Johnson's article, he does not call for this court to adopt any standards held by the Ninth Circuit. The question here, as posed by counsel, is whether or not there should be a presumption that the treating physician should be given controlling weight. There is no basis in the law for a presumption right out of the gate that the treating physician should be given controlling weight. And appellant has not provided any statement that there is any law that provides it, and that is because there isn't. The treating physician rule is actually somewhat straightforward as far as the agency is concerned. If the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and it's not inconsistent with other substantial evidence, then the treating physician's opinion gets controlling weight. When it comes up to this court and is reviewing a decision by an ALJ on what weight to give a treating physician, we come to the substantial evidence standard. If the ALJ's decision is supported by substantial evidence, it stands. This court knows it has the logical bridge requirement, which is almost a common sense requirement. The ALJ has to provide the support for his or her opinion. Opposing counsel would like the court to adopt a more stringent standard that would apply apparently a checklist of factors in every case or require the ALJ to address specific items every time. That is, one, not called for by the regulations or the statute, and two, it's unnecessary. When this court gets a case before it, if the ALJ has only touched on one factor and hasn't supported his or her decision as to why a treating physician gives controlling weight, this court understandably sends it back. It has a problem with it. If an ALJ provides two or three reasons and those actually turn out to be enough, when looking at the facts of the case, then this court, in certain instances, might uphold the decision. It just goes back to a sort of common sense approach and the good reasons analysis. The regulations just provide that the ALJ should provide good reasons for the weight given to the treating physician. In this case, those good reasons were provided. Counsel says that the primary focus is Dr. Florin's opinion.  That is the only opinion that counsel raises any argument on or challenges the ALJ's analysis of. When it comes to that opinion, the ALJ provided numerous reasons as to why he discounted the opinion. It was, quote, contrary to Dr. Florin's clinical findings. It was contrary to the other objective findings in the record. It appears designed to placate a demanding patient. The ALJ's analysis is pretty clear here. There's no question in my mind, and I doubt there's a question in the court's mind, if it reads the opinion as to why the ALJ did not give controlling weight to the second opinion from Dr. Florin. What we had was an opinion in September of 2010 where Dr. Florin essentially limits claimant to sedentary work, not in those exact terms as defined by the agency, but there's not a preclusion to work, aside from that she can't walk rough and uneven surfaces, has some problems with her legs, but it is a far cry from the January 2012 opinion where he essentially opines that she is disabled. And then the question comes to, in analyzing that opinion, is it well supported? Is it consistent? In this case, it is not. In terms of what we know Dr. Florin looked at in reaching his January 2012 opinion, we know only that he looked at the claimant. There's no evidence that he reviewed records at that point in time. When Dr. Florin goes through claimant's various ailments, he notes at the end that the claimant's husband backs up those findings, or also, excuse me, patient is accompanied by her husband and agrees with the history as stated above, which I believe is a clear indication that this is information that's coming straight out of a pellant's mouth. So there's nothing cited by Dr. Florin that justifies the drastic about face, which in turn is why the ALJ decides not to give that opinion controlling weight. If the court doesn't have any questions. Mr. Milner, just help me make sure I've got this straight. Dr. Florin had treated plaintiff for the broken leg. Correct. Back in 2009, 2010, right? And in 2010 tells us she's not disabled, not completely precluded from work at that point. But then in 2012 takes the approach that additional respiratory and heart problems, in essence, push her over the edge to disabled. Is that right? Yes. I'm not sure that it's entirely clear as to the basis for his more extreme opinion, but given what's in his analysis, that would appear to be the case. I would just simply state it's not explicit, but that would appear to be the case. Thank you. Thank you, Mr. Milner. Thank you. Mr. Duncan. There are additional pieces of information that are available in 2012 that were not available in 2010 as well. And I never can pronounce this right. In Arnold, Kyrie malformation was found in the head. She also suffered from bilateral ulnar neuropathy that had to have surgery. She also started having the heart issues as well as she had had since 2010 problems with the leg that had to be treated. All of these are factors that weigh in here. Now, counsel. Did Dr. Florin have any of that? He hadn't seen her for about, what, a year and a half or so, right? Correct. There's nothing that indicates, but the only thing is, as her general practitioner, access to the medical information would have been there. I wish doctors would say, I reviewed the medical record in their records, but they don't. But I guess you would like to believe at least the doctors do review the records before they treat a patient. Otherwise, we would be talking of other issues legally. But in this particular case, with respect to counsel, clinical findings and other records, the ALJ makes reference to them, but there's nothing in any detail showing how there is this alleged inconsistency. Where is this inconsistency that's supposedly stated? We're putting weight on a treating source and asking him to make that finding. And in this particular case, he made his opinion based upon a wide range of medical information. My time has expired. If there is no further questions or anything, thank you very much for this opportunity. Thank you, Mr. Duncan. Thank you, Mr. Helter. Case taken under advisement.